IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DAVIS MEMORIAL GOODWILL )
INDUSTRIES, d/b/a GOODWILL OF )
GREATER WASHINGTON, )
)
      Plaintiff, )
)
v. ) Civil Action No. 1:17cv0347 (TSE/JFA)
)
ALAA GARADA, )
a/k/a ALAN GARADA, )
)
      Defendant. )
_____ )

FILED MAY 26 2017 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

## **PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS**

This matter is before the court on plaintiff's Motion for Default Final Judgment and Permanent Injunction and Accompanying Memorandum in Support Thereof (Docket no. 18) ("motion for default judgment"). In this action, Davis Memorial Goodwill Industries, d/b/a Goodwill of Greater Washington, ("plaintiff" or "Goodwill") seeks a default judgment against Alaa Garada a/k/a "Alan Garada" ("defendant" or "Garada") as well as a permanent injunction. Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

### **Procedural Background**

On March 24, 2017, plaintiff filed the verified complaint in this action alleging breach of contract. (Docket no. 1) ("Compl."). The same day, plaintiff also filed a motion for preliminary injunction (Docket no. 4) and noticed it for a hearing on April 14, 2017 (Docket no. 6). The District Judge entered an Order on March 27, 2017, directing plaintiff to provide notice

reasonably calculated to inform defendant of the April 14, 2017 preliminary injunction hearing, or reschedule the hearing for a date for which reasonable notice had been provided. (Docket no. 7). On March 28, 2017, a summons was issued for service on Alaa Garada at 5105 Colebrook Place, Alexandria, VA 22312. (Docket no. 8). On March 29, 2017, plaintiff's counsel submitted a notice stating that defendant was personally served on March 28, 2017 with the complaint and its exhibits, the summons, plaintiff's motion for preliminary injunction and its exhibits, and the notice of hearing on plaintiff's motion for preliminary injunction. (Docket nos. 9, 9-1). In accordance with Fed. R. Civ. P. 12(a), defendant's responsive pleading was due April 18, 2017, 21 days after service of process.

On April 14, 2017, plaintiff and its counsel appeared before the District Judge for a hearing on plaintiff's motion for preliminary injunction and no one appeared on behalf of defendant. (Docket no. 11). The District Judge entered an Order granting in part and denying in part plaintiff's motion for preliminary injunction on April 17, 2017. (Docket no. 12). That Order directed defendant to disclose to plaintiff the location of each Goodwill-branded donation bin he had placed without approval, and authorized plaintiff to remove those bins and any Goodwill branding, then promptly return the bins to defendant. (Docket no. 12 at 7). Plaintiff was further directed to serve a copy of the Preliminary Injunction Order on defendant, and submit a pleading advising the court whether plaintiff had collected and returned to defendant the unauthorized bins. (*Id.*). Plaintiff filed a notice on April 20, 2017 stating that defendant had been personally served with the Preliminary Injunction Order on April 19, 2017. (Docket no. 13). On May 12, 2017, plaintiff submitted its supplemental pleading explaining that its representative and defendant had an in-person conversation, in which defendant stated that he had removed all of the Goodwill-branded bins that he previously placed. (Docket no. 19 ¶ 4).

Plaintiff stated that it collected all Goodwill-branded bins that it was aware of at that time, and returned them to plaintiff, but then subsequently learned of further unauthorized bins from landowners, which it planned to collect by May 16, 2017. (Docket no. 19 ¶¶ 1–2).

On April 27, 2017, plaintiff filed a request for entry of default against defendant (Docket no. 15), and the Clerk of Court entered the default of defendant on April 28, 2017 (Docket no. 16). On May 8, 2017, the District Judge entered an Order instructing plaintiff to file a motion for default judgment, an accompanying memorandum, and a notice setting a hearing on the motion. (Docket no. 17). On May 12, 2017, plaintiff filed the motion for default judgment with an incorporated memorandum in support (Docket no. 18), and on May 15, 2017 noticed the motion for a hearing before the undersigned on May 26, 2017 (Docket no. 20). The motion for default judgment and notice of hearing were served on defendant at 5105 Colebrook Place, Alexandria, Virginia 22312. The motion for default judgment was sent to defendant by U.S. mail on May 12, 2017 (Docket no. 18 at 15), and the notice of hearing was sent by certified mail on May 15, 2017 (Docket no. 21). On May 26, 2017, counsel for the plaintiff appeared at the hearing before the undersigned and no one appeared on behalf of the defendant.

### Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Based on defendant's failure to file a responsive pleading in a timely manner, the Clerk of Court has entered a default as to defendant. (Docket no. 16).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a

responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

## Jurisdiction and Venue

The Court has previously found that there is personal and subject matter jurisdiction and that venue is proper in this district. (Docket no. 12 at 3).

## Service

Pursuant to Fed. R. Civ. P. 4(e)(2)(A), an individual within a judicial district of the United States may be served by delivering a copy of the summons and complaint to the individual personally. A summons was issued on March 28, 2017 for service on Alaa Garada at 5105 Colebrook Place, Alexandria, Virginia 22312. (Docket no. 8). On March 31, 2017, an affidavit of service was filed by a private process server who affirmed that he personally served defendant on March 28, 2017 with "the Summons in A Civil Action, Notice, Notice of Hearing on Plaintiff's Motion for Preliminary Injunction, Plaintiff's Motion for Preliminary Injunction and Incorporated Brief in Support Thereof, Exhibits, and Civil Cover Sheet." (Docket no. 10 at 1). Although this affidavit does not clearly indicate whether plaintiff was also provided a copy of the complaint, plaintiff filed a notice on March 29, 2017 in which it confirmed that defendant was served with a copy of the complaint and its exhibits on March 28, 2017 when it was served with the other documents referenced in the affidavit. (Docket no. 9 at 1).

4

Based on these facts, the undersigned recommends a finding that the defendant was served properly with a copy of the summons and complaint.

## Grounds for Entry of Default

In accordance with Federal Rule of Civil Procedure 12(a), defendant's responsive pleading to the complaint was due on April 18, 2017, 21 days after being served with the summons and complaint. No responsive pleading has been filed and the time for doing so has expired. On April 27, 2017, plaintiff filed a request for entry of default against defendant (Docket no. 15), and the Clerk of Court entered the default of defendant on April 28, 2017 (Docket no. 16). On May 12, 2017, plaintiff filed a motion for default judgment with a memorandum in support incorporated therein and served the motion on defendant via U.S. mail at 5105 Colebrook Place, Alexandria, Virginia 22312. (Docket no. 18). On May 15, 2017, plaintiff filed a notice setting a hearing on its motion for default judgment before the undersigned on May 26, 2017. (Docket no. 20). The notice of hearing was sent to defendant by certified mail on May 15, 2017. (Docket no. 21).

Accordingly, the undersigned magistrate judge recommends a finding that the Clerk of Court has properly entered a default as to the defendant.

## Liability

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because defendant failed to file a responsive pleading and is in default, he admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6). The following facts are established by the complaint. (Docket no. 1).

Plaintiff is a non-profit 501(c)(3) corporation organized under the laws of the District of Columbia whose mission is "to transform lives and communities through the power of education

and employment." (Compl. ¶¶ 1, 6). Plaintiff funds its mission in various ways, including collecting individual donations from donation bins and attended donation sites located throughout the Washington metropolitan area. (Compl. ¶¶ 7–8). To manage excess donations and non-saleable items ("salvage goods"), plaintiff contracts with third parties to purchase and retrieve salvage goods from its retail stores. (Compl. ¶ 10). Under these agreements, the third party pays plaintiff a monthly fee and agrees to retrieve all salvage goods in exchange for the right to obtain such goods. (*Id.*). Plaintiff also contracts with third parties to establish and service donation bins and donation sites bearing the Goodwill name and logo. (Compl. ¶ 11). With authorization from plaintiff and approval from the property owner where the collection sites will be located, third parties are permitted to place Goodwill-branded donation bins and are responsible for the collection and maintenance of those sites. (*Id.*).

Defendant is an individual citizen of the Commonwealth of Virginia. (Compl. ¶ 2). In March 2012, plaintiff entered a contract with defendant to act as a salvage dealer for four of plaintiff's retail stores. (Compl. ¶ 12). Defendant signed that agreement under the name "Alan Garada, Owner" on behalf of "World Trade," which is not an existing entity. (Compl. ¶¶ 13–14). Pursuant to this agreement, defendant was to provide trailers for salvage goods at these stores, and pick up and replace the trailers within thirty-six hours of notification from the store that the trailer was ready for removal. (Compl. ¶ 16). The agreement also provided that defendant could place up to 150 donation bins and ten attended donation sites anywhere within plaintiff's geographic bounds, subject to plaintiff's prior authorization and written approval from the owner of the property. (Compl. ¶ 18). The agreement further obligated defendant to "timely pickup and clean up" all of its sites and bins. (Compl. ¶ 19). Under this agreement, defendant was to pay plaintiff $61,000 per month, due on the fifteenth day of each month with a three percent late

fee added for any payment received after the twenty-fifth day of the month. (Compl. ¶ 20). This agreement was to be in effect until March 23, 2015, and each party maintained the right to terminate the contract with ninety days written notice. (Compl. ¶ 17).

Plaintiff and defendant subsequently executed an addendum to the original salvage agreement ("First Addendum"), which provided that defendant would act as plaintiff's salvage dealer at all of plaintiff's stores and defendant's payment to plaintiff was increased to $130,000 per month. (Compl. ¶¶ 21, 26). Defendant again signed the First Addendum as "Alan Garada, Owner" on behalf of "World Trade." (Compl. ¶ 23). The First Addendum was effective as of December 14, 2013, and was for a term through June 30, 2014. (Compl. ¶¶ 21–22). However, the parties later extended the First Addendum and original salvage agreement to continue on a month-to-month basis. (Compl. ¶¶ 22).

On February 13, 2015, the parties signed a second addendum under which they agreed to extend the original salvage agreement and First Addendum on a month-to-month basis and permitted either party to terminate the agreements by providing thirty-days notice to the other party ("Second Addendum").[1] (Compl. ¶¶ 27, 32). As with the other contracts, defendant signed the Second Addendum as "Alan Garada, Owner" on behalf of "World Trade." (Compl. ¶ 28).

Plaintiff alleges that beginning around May 2016, defendant became increasingly unable to remove trailers from Goodwill retail stores upon request, causing plaintiff to incur substantial expenses to remove the excess salvage goods. (Compl. ¶¶ 34–35). Plaintiff submitted two invoices to defendant in 2016 totaling $148,686.73 for reimbursement of expenses incurred in having salvage goods removed from its stores that were defendant's responsibility under the Salvage Agreement. (Compl. ¶ 37). Due to defendant's failure to perform his contractual

---

[1] The original salvage agreement, First Addendum, and Second Addendum will be hereinafter collectively referred to as the "Salvage Agreement."

7

obligations, on November 18, 2016 plaintiff hand delivered to defendant a letter terminating the Salvage Agreement effective December 18, 2016. (Compl. ¶ 39). The termination letter detailed plaintiff's expectations for a transition, and explained that defendant was still obligated to make his $130,000 payment for the month of November 2016, and a prorated payment of $71,290 for the month of December 2016. (Compl. ¶ 41). Despite plaintiff's demands, defendant has failed to remit payments for the invoices and for the amounts owed under the Salvage Agreement. (Compl. ¶ 44).

Plaintiff further alleges that defendant breached the Salvage Agreement by placing Goodwill-branded donation bins in locations without plaintiff's prior approval or permission from the property owners of those locations. (Compl. ¶ 45). Plaintiff claims it has received several complaints from property owners about unauthorized bins on their property, which has forced plaintiff to incur costs in removing these unauthorized bins. (Compl. ¶¶ 46–47).

Given that the factual allegations set forth above were alleged in the complaint and are therefore admitted, the undersigned recommends a finding that plaintiff has established a claim for breach of contract against the defendant.

### Measure of Damages

Plaintiff's complaint sought a judgment for (1) all amounts owed under the Salvage Agreement, (2) all actual damages incurred by plaintiff as a result of the breaches of the Salvage Agreement, (3) preliminary and permanent injunctive relief ordering defendant to remove all Goodwill-branded donation bins and attended donation sites, (4) punitive damages, (5) all attorney's fees incurred by plaintiff in this matter, (6) all costs incurred by plaintiff in this matter, (7) pre-judgment interest, and (8) such other relief as the court deems proper. (Compl. at 11). In its motion for default judgment, plaintiff seeks a total judgment in the amount of $349,976.73,

8

comprised of $130,000.00 in the amount due under the Salvage Agreement for November 2016, $71,290.00 in the amount due under the Salvage Agreement for December 2016, and $148,686.73 for expenses incurred by plaintiff for defendant's failure to remove salvage goods upon plaintiff's request. (Docket no. 18 at 8–9).

**Breach of Contract**

As an initial matter, defendant signed the Salvage Agreement as "Alan Garada, Owner" on behalf of "World Trade," an organization that plaintiff alleges did not exist. (Compl. ¶¶ 13–14, 23–24, 28–29). The Virginia Code provides that an individual will be held personally liable for transactions entered into on behalf of a corporation that it knows does not exist. Va. Code § 13.1-622. Because defendant purported to enter into a contract on behalf of a non-existent entity, he should be held personally liable under the Salvage Agreement. *Id.* In examining plaintiff's claim, a federal court sitting in diversity jurisdiction must apply state substantive law as announced by the state's highest court. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Virginia law, the required elements for proving breach of contract are: "(1) a legal obligation of a defendant to the plaintiff; (2) a violation or breach of that right or duty; and (3) a consequential injury or damage to the plaintiff." *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 237 Va. 543, 546 (1989) (quoting *Caudill v. Wise Rambler, Inc.*, 210 Va. 11, 13 (1969)).

Here, plaintiff alleges that defendant breached the Salvage Agreement entered into by the parties by failing to (1) remove salvage goods upon plaintiff's request, (2) submit monthly payments for November and December 2016, (3) obtain plaintiff's prior approval for placement of donation bins, (4) obtain written approval from property owners prior to placing Goodwill-branded donation bins on their properties, and (5) remove donation bins upon plaintiff's request. (Docket no. 8 at 15; Compl. ¶ 65). Under the terms of the Salvage Agreement, defendant was

required to provide trailers for salvage goods at plaintiff's retail stores, and retrieve the goods within thirty-six hours of notification from the store, in exchange for the right to obtain such goods. (Docket no. 1-1). The Salvage Agreement also provided that defendant had the right to place up to 150 Goodwill-branded donation bins and ten attended donation sites within plaintiff's geographic bounds, subject to prior authorization from both plaintiff and the individual property owners. (Compl. ¶ 18–19). Defendant was further obligated to maintain the sites and bins, and remit a monthly payment of $61,000.00, which was later increased to $130,000.00, to plaintiff. (Docket nos. 1-1, 1-2).

Plaintiff alleges that beginning in May 2016, defendant became increasingly unwilling or unavailable to retrieve trailers from its retail stores. (Compl. ¶ 34). Accordingly, plaintiff was forced to incur $148,686.73 in costs to remove the excess goods, and submitted two invoices to defendant demanding payment for this amount. (Compl. ¶ 37). Defendant has not paid plaintiff this amount, and plaintiff terminated the Salvage Agreement with defendant effective December 18, 2016. (Compl. ¶ 39). Plaintiff further alleges that defendant has not paid it the amounts due under the Salvage Agreement for November and December 2016. (Compl. ¶¶ 41–43). This amount totals $201,290.00, which comprises of $130,000.00 for November 2016, and $71,290.00 as the prorated amount due in December 2016. (Compl. ¶ 41). Finally, plaintiff claims that defendant placed several Goodwill-branded bins without first obtaining plaintiff's and the landowner's permission, in violation of the Salvage Agreement between the parties. (Compl. ¶ 45). Plaintiff alleges that it has incurred costs in removing these unauthorized bins (Compl. ¶ 47), but does not specify in the complaint or motion for default judgment that it seeks an award of damages for removal of these unauthorized bins.

Based on the foregoing, the undersigned recommends a finding that plaintiff has established a claim of breach of contract against defendant that entitles it to a judgment in the amount of $201,290.00 for unpaid amounts due under the Salvage Agreement and $148,686.73 for costs incurred in removing excess salvage goods due to defendant's breach of his obligations under the Salvage Agreement.

**Attorney's Fees, Costs, Pre-Judgment Interest, and Punitive Damages**

In the complaint, plaintiff seeks an award of all costs and attorney's fees it incurred in this matter as well as an award for pre-judgment interest and punitive damages. (Compl. at 11). However, plaintiff does not address these requests in its motion for default judgment, or specify the amounts claimed for these requests. Accordingly, the undersigned magistrate judge does not recommend plaintiff be awarded its attorney's fees, pre-judgment interest, or punitive damages.[2] Plaintiff should, however, be entitled to submit a bill of costs pursuant to 28 U.S.C. § 1920.

**Permanent Injunction**

Plaintiff also seeks a permanent injunction allowing it to seize any remaining unauthorized Goodwill-branded donation bins that were placed by defendant. (Docket no. 18 at 9). On April 17, 2017, the District Judge granted in part plaintiff's motion for preliminary injunction and ordered defendant to disclose to plaintiff in writing the location of each Goodwill-branded donation bin he placed without permission, and authorized plaintiff to seize those bins, remove any Goodwill branding, and return the bins to defendant. (Docket no. 12 at 7). Plaintiff was further directed to submit a pleading advising the court whether it had collected and returned to defendant the unauthorized bins. (*Id.*). On May 12, 2017, plaintiff submitted a notice that it and defendant had an in-person conversation, in which defendant stated he had removed all

---

[2] The Salvage Agreement also does not contain any provision relating to an award of attorney's fees.

unauthorized Goodwill-branded bins that he had previously placed. (Docket no. 19 ¶ 4). Plaintiff asserted that it collected all bins that it was aware of at the time, removed its branding, and returned the bins to defendant, but had subsequently learned of further unauthorized bins from landowners. (Docket no. 19 ¶¶ 1–2). Plaintiff does not believe that defendant is intentionally concealing the location of remaining bins, but believes that it is possible there are outstanding bins of which defendant has forgotten their location. (Docket no. 18 at 10). Accordingly, plaintiff requests a permanent injunction to maintain authority to remove any later-discovered unauthorized bins. (*Id.*).

To obtain a preliminary injunction, the plaintiff must show (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if an injunction is not granted, (3) that the balance of equities tips in plaintiff's favor, and (4) that the injunction serves the public interest. *W. Va. Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009) (internal citations omitted). This court has held that the standard for obtaining a permanent injunction is the same as for a preliminary injunction, "except that actual success on the merits, instead of likelihood of success is required." *Grenadier v. BWW Law Group*, No. 1:14-CV-0827-LMB-TCB, 2015 WL 417839, at *11 (E.D. Va. Jan. 30, 2015) (citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987)).

Here, the undersigned recommends that plaintiff has satisfied each of these elements and that a permanent injunction should issue. First, plaintiff has demonstrated actual success on the merits. This is an action for breach of contract, and plaintiff has demonstrated that defendant breached the Salvage Agreement in various ways, including by placing Goodwill-branded bins on property without authorization from plaintiff or the landowners. As described previously, by

12

failing to plead or otherwise defend in this action, the undersigned recommends that defendant be found to have admitted this allegation and be liable for breach of contract.

Regarding irreparable harm, the Preliminary Injunction Order entered in this matter found that plaintiff made the requisite showing of irreparable harm based on imminent loss of goodwill. (Docket no. 12 at 5) (citing *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010)). Plaintiff is a charitable organization whose reputation in the community is of upmost importance. Even with many of the unauthorized bins removed, plaintiff still faces the same risk of reputational damage from landowners on whose property the unauthorized bins are placed, and from individuals who make donations to these bins, but of which plaintiff is unaware.

Similarly, the balance of equities weighs in plaintiff's favor. Although diminished due to the Preliminary Injunction, plaintiff still faces the same risk of reputational damage due to any additional unauthorized bins. In contrast, defendant will suffer no hardship or inconvenience. Plaintiff has conceded that defendant may have disclosed all of the bins of which he is aware, so this permanent injunction will serve only to authorize plaintiff to unilaterally remove any later-discovered bins, remove any Goodwill labeling, and make the bins available for defendant.

Lastly, a permanent injunction is in the public interest for the same reasons as described in the Preliminary Injunction Order. The public has an interest in supporting charitable organizations like plaintiff, and is harmed because donations intended for charity are not being given to the charity. Additionally, there is a public interest in preserving the integrity of contracts and ensuring that parties have a remedy for breaches.

For the foregoing reasons, the undersigned recommends a finding that plaintiff has established the elements necessary to entitle it to a permanent injunction, and that a permanent

injunction authorizing plaintiff to remove all later-discovered unauthorized donation bins placed by defendant be issued.

## Conclusion

For these reasons, the undersigned magistrate judge recommends that a default judgment be entered in favor of plaintiff Goodwill of Greater Washington against defendant Alaa Garada in the total amount of $349,976.73 comprised of $201,290.00 for unpaid amounts due under the contract and $148,686.73 for costs incurred in removing excess salvage goods due to defendant's breach of contract. The undersigned further recommends the issuance of a permanent injunction, whereby plaintiff is authorized to seize any Goodwill-branded donation bins improperly placed by defendant without authorization, remove the Goodwill branding from the bins, and make the bins available for defendant to retrieve.

## Notice

By means of the court's electronic filing system and by mailing a copy of this proposed findings of fact and recommendations to Alaa Garada, 5105 Colebrook Place, Alexandria, Virginia 22312, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 26th day of May, 2017.

/s/ JFA
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia