IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| DAVIS MEMORIAL GOODWILL INDUSTRIES<br>*d/b/a Goodwill of Greater Washington,* | ) ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 1:17cv0347 (TSE/JFA) |
| v. | ) ) | |
| ALAA GARADA,<br>*a/k/a Alan Garada,* | ) ) ) | |
| Defendant. | ) ) ) | |

### PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on defendant Alaa Garada's ("defendant" or "Garada") motion to vacate default judgment. (Docket no. 48). Since defendant's motion relates to a post-trail matter and seeks relief that could be dispositive, it is being considered in accordance with 28 U.S.C. § 636(b)(3). *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 925 F.2d 853 (5th Cir. 1991). Pursuant to 28 U.S.C. § 636(b), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

### Factual Background

As alleged in its complaint (Docket no. 1) ("Compl."), plaintiff Davis Memorial Goodwill Industries ("plaintiff" or "Goodwill") is a non-profit charitable 501(c)(3) organization funding its mission through diverse lines of business, including operating a chain of retail stores in the Washington, D.C. metropolitan area. (Compl. ¶¶ 5–6). Goodwill collects donations at donation bins and attended donation sites throughout the area, but cannot house and sell a

1

significant portion of the donations it receives at its retail stores. (Compl. ¶¶ 8–9). To manage the excess donations and non-saleable items ("salvage goods"), Goodwill contracts with third parties for their removal. (Compl. ¶ 10). On March 23, 2012, Goodwill and "Whole Trade" entered into an agreement for a term ending on March 23, 2015 whereby Goodwill granted "Whole Trade" the right to act as the salvage dealer for the salvage goods at four of Goodwill's retail stores (the "Salvage Agreement"). (Compl. ¶¶ 12–13, 17). Whole Trade, which is not an existing entity, listed "Alan Garada" as its owner, and Garada signed the Salvage Agreement. (Compl. ¶¶ 13–15).

Under the terms of the Salvage Agreement, Garada would satisfy Goodwill's salvage needs by picking up and replacing trailers at Goodwill's retail stores within thirty-six hours of notification from the store that the trailer was ready for pickup. (Compl. ¶ 16). The Salvage Agreement also gave Garada the right to place up to one hundred and fifty donation bins and up to ten attended donation sites anywhere within Goodwill's geographic bounds, subject to certain conditions. (Compl. ¶ 18). Garada originally agreed to pay Goodwill $61,000 per month, and increased that amount to $130,000 per month under the terms of an addendum signed on December 14, 2013 for a term ending on June 30, 2014. (Compl. ¶¶ 22, 26). On February 13, 2015, the parties signed a second addendum extending the Salvage Agreement on a month-to-month basis until terminated by either party, signed by Garada on behalf of "World Trade." (Compl. ¶ 27).

Around May 2016, Garada became increasingly unwilling or unable to remove trailers from Goodwill stores upon request, causing the stores to run out of space to store the salvage goods and forcing Goodwill to incur substantial expenses to remove the excess salvage. (Compl. ¶¶ 33–36). Goodwill submitted two invoices to Garada for reimbursement on August 26, 2016

and November 9, 2016, totaling $148,686.73 (the "Invoices"). (Compl. ¶ 37). Goodwill

terminated the Salvage Agreement on November 18, 2016, effective December 18, 2016, and

delivered a termination letter to Garada by hand. (Compl. ¶¶ 38–39). Goodwill followed up on

January 5, 2017 regarding the unpaid Invoices as well as unpaid monthly payments, totaling

$349,976.73. (Compl. ¶¶ 42–43). Garada ignored Goodwill's repeated requests to remove

unauthorized bins, leading to reputational damage and lost donations. (Compl. ¶¶ 45–51). On

February 28, 2017, Goodwill sent a letter via FedEx to Garada identifying items related to the

winding down of the business relationship, demanding that Garada remove all outstanding

donation bins, remove Goodwill's name and logo from those bins, and pay the outstanding

Invoices and monthly payments. (Compl. ¶¶ 57–58).

## Procedural Background

On March 24, 2017, plaintiff filed the verified complaint in this action alleging breach of

contract. (Docket no. 1). The same day, plaintiff also filed a motion for preliminary injunction

(Docket no. 4) and noticed it for a hearing on April 14, 2017 (Docket no. 6). The District Judge

entered an Order on March 27, 2017, directing plaintiff to provide notice reasonably calculated

to inform defendant of the April 14, 2017 preliminary injunction hearing, or reschedule the

hearing for a date for which reasonable notice had been provided. (Docket no. 7). On March 28,

2017, a summons was issued for service on Alaa Garada at 5105 Colebrook Place, Alexandria,

Virginia 22312. (Docket no. 8). On March 29, 2017, plaintiff's counsel submitted a notice

stating that defendant was personally served on March 28, 2017 at 7:59 p.m. with the verified

complaint and its exhibits, plaintiff's motion for preliminary injunction and its exhibits, and the

notice of hearing on plaintiff's motion for preliminary injunction. (Docket nos. 9, 9-1). In

3

accordance with Federal Rule for Civil Procedure 12(a), defendant's responsive pleading was due on April 18, 2017, twenty-one days after service of process.

On April 14, 2017, plaintiff and its counsel appeared before the District Judge for a hearing on plaintiff's motion for preliminary injunction and no one appeared on behalf of defendant. (Docket no. 11). The District Judge entered an Order granting in part and denying in part plaintiff's motion for preliminary injunction on April 17, 2017. (Docket no. 12). That Order directed defendant to disclose to plaintiff the location of each Goodwill-branded donation bin he had placed without approval by April 21, 2017, and authorized plaintiff to remove those bins and any Goodwill branding, then promptly return the bins to defendant. (Docket no. 12 at 7). Plaintiff was further directed to serve a copy of the Preliminary Injunction Order on defendant, and submit a pleading advising the court whether plaintiff had collected and returned the unauthorized bins to defendant. (*Id.*). Plaintiff filed a notice on April 20, 2017 stating that defendant had been personally served with the Preliminary Injunction Order on April 19, 2017. (Docket no. 13). On May 12, 2017, plaintiff submitted its supplemental pleading explaining that its representative and defendant had an in-person conversation in which defendant stated that he had removed all of the Goodwill-branded bins he previously placed. (Docket no. 19 ¶ 4). Plaintiff stated that it collected all Goodwill-branded bins that it was aware of at that time and returned them to defendant, but then subsequently learned of further unauthorized bins from landowners, which it planned to collect by May 16, 2017. (Docket no. 19 ¶¶ 1–2).

On April 27, 2017, plaintiff filed a request for entry of default against defendant and plaintiff mailed a copy of those pleadings to the defendant at his home address. (Docket no. 15). The Clerk of Court entered default as to defendant Alaa Garada d/b/a Alan Garada on April 28, 2017 for failure to plead or otherwise defend. (Docket no. 16). On May 8, 2017, the District

4

Judge entered an Order instructing plaintiff to file a motion for default judgment, an accompanying memorandum, and a notice setting a hearing on the motion. (Docket no. 17). On May 12, 2017, plaintiff filed a motion for default judgment (Docket no. 18), and on May 15, 2017 noticed the motion for a hearing before the undersigned on May 26, 2017 (Docket no. 20). The motion for default judgment was sent to defendant's home address at 5105 Colebrook Place, Alexandria, Virginia 22312 by U.S. Mail on May 12, 2017 (Docket no. 18 at 15), and the notice of hearing was sent by certified mail to the same address on May 15, 2017 (Docket no. 21). On May 26, 2017, counsel for plaintiff appeared at the hearing before the undersigned and no one appeared on behalf of defendant. (Docket no. 22). Following the hearing, the undersigned filed proposed findings of fact and recommendations recommending the entry of a default judgment, with objections due by June 9, 2017. (Docket no. 23). A copy of the proposed findings of fact and recommendations were mailed to the defendant at his home address by the undersigned. No objections were filed, and the undersigned's proposed findings of fact and recommendations were adopted: the plaintiff's motion for default judgment was granted and a judgment was entered against defendant for $349,976.73, and the preliminary injunction was converted into a permanent injunction. (Docket no. 24). The court mailed the Judgment and Permanent Injunction Order to defendant at the address listed on the executed summons on June 14, 2017.

On November 20, 2017, plaintiff filed several notices, seeking to depose Ahmed Garada, Akram Garada, Khaled Garadah, Lina Elnakka, Rafik Moheyldin, and Rim El Naka on December 7 and 8, 2017. (Docket nos. 26–31). These notices were served by U.S. Mail to Alaa Garada at 5015 Colebrook Place, Alexandria, Virginia 22312. On December 1, 2017, plaintiff re-noticed those same depositions for January 8 and 9, 2018 and served the notices on Alaa Garada by U.S. Mail. (Docket nos. 32–37). On January 5, 2018, plaintiff again re-noticed the

deposition of Khaled Garadah for February 12, 2018 and served the notice on Alaa Garada by

U.S. Mail. (Docket no. 38). On January 9, 2018, plaintiff moved to compel responses to its

post-judgment discovery responses, and on January 19, 2018, plaintiff moved to compel the

deposition of Lina Elnakka, defendant's sister-in-law. (Docket nos. 39, 40). Plaintiff served

both motions on Alaa Garada by U.S. Mail, and served the latter motion on Lina Elnakka by U.S.

Mail at the same address. (*Id.*). On January 26, 2018, counsel for plaintiff appeared at the

hearing before the undersigned and no one appeared on behalf of defendant, and the court

granted plaintiff's motions. (Docket nos. 45–47). At the hearing, plaintiff's counsel noted that

they had been in contact with defendant, and expected him to file a motion seeking to vacate the

default judgment.

Later in the day on January 26, 2018, defendant filed this motion to vacate the default

judgment, claiming that he never received the original summons in this case. (Docket nos. 48,

49). The memorandum had two affidavits attached, one from defendant and one from his wife,

Rim El Naka ("El Naka"),[1] stating that nobody came to their residence at any time on March 28,

2017, the date of initial service. (Docket nos. 49-2, 49-3). Plaintiff filed its opposition on

February 9, 2018, representing that it personally served defendant and sent pleadings by U.S.

Mail several times over the course of the litigation. Defendant did not submit a reply, but

submitted a letter to the court from El Naka stating that she received court documents regarding

"Mr. Khaled Garada, Ms. Lina El-Nakka, and Mr. Rafik Moheyeldin," despite notifying the

messenger that those individuals had not lived there for more than three years. (Docket no. 56 at

1). On February 16, 2018, the parties appeared before the undersigned to present argument on

defendant's motion. (Docket no. 58). At this hearing the court also heard testimony from the

three witnesses for the defendant, Alaa Garada, Reem El Naka, and Ken Robinson, a criminal

---

[1] El Naka's name has been spelled in different ways, including as "Rim El Naka" and "Reem El Naka."

defense attorney working with defendant on a separate matter, and plaintiff presented one witness, Abel Emiru, a private process server.[2] (*Id.*).

## Proposed Findings and Recommendations

Defendant alleges that plaintiff failed to personally serve him and otherwise did not provide notice of the action until November 2017. As explained in more detail below, it is recommended that there be a finding that defendant was served properly and had actual notice of the lawsuit.

### Personal Service

Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." When service is contested, courts in this district have held that "[a] signed return of service constitutes *prima facie* evidence of valid service, which can be overcome only by strong and convincing evidence." *Ramsay v. Sanibel & Lancaster Ins, LLC*, 2015 WL 3830891, *6 (E.D. Va. June 19, 2015) (citing *Homer v. Jones-Bey*, 415 F.3d 748, 752 (7th Cir. 2005)). On March 31, 2017, plaintiff filed an affidavit of service signed by Abel Emiru, a private process server, swearing that he personally served defendant Alaa Garada on March 28, 2017 at 7:49 p.m. with "the Summons in A Civil Action, Notice, Notice of Hearing on Plaintiff's Motion for Preliminary Injunction, Plaintiff's Motion for Preliminary Injunction and Incorporated Brief in Support Thereof, Exhibits, and Civil Cover Sheet" at 5105 Colebrook Place, Alexandria, Virginia 22312. (Docket no. 10). Garada is described as a 62 year-old white male with black hair, standing 6'0", and weighing 175 pounds. (*Id.*).

---

[2] Emiru also verified four affidavits of service he signed, affirming that he served Alaa Garada on January 12, 2017, March 28, 2017, and April 19, 2017, and Garada's son on November 8, 2017. (Docket no. 58-1).

Defendant's argument rests almost entirely on statements from defendant and El Naka, as stated in defendant's motion and at the evidentiary hearing held on Friday, February 16, 2018. As an initial matter, defendant and El Naka confirmed that at all times during this litigation, they resided at 5105 Colebrook Place, Alexandria, Virginia 22312. Defendant and his wife state that defendant was not personally served with the summons and complaint on March 28, 2017 at 7:49 p.m. at 5105 Colebrook Place, Alexandria, Virginia 22312 and that no one came to defendant's home to serve defendant with the summons at any time on March 28, 2017. (Docket no. 49 ¶ 4; *see* Docket nos. 49-2, 49-3). Defendant makes two related, but somewhat conflicting arguments in support of his claim that no one appeared at his home: (1) he was in recovery from heart surgery and was therefore unfit to answer the door; and (2) the original affidavit of service described his physical appearance incorrectly. (Docket no. 49 ¶ 5).

Defendant swore in his affidavit and testified during the evidentiary hearing that on December 2, 2016, he had triple bypass open heart surgery, and remained in the hospital for about five days. (Docket no. 49-2 ¶ 2). Defendant was briefly readmitted to the hospital on December 31, 2017 due to complications stemming from the surgery, including mini-strokes, but has consistently been at his residence since at least March 2017. (*Id.* ¶ 5). As a result of the surgery, defendant testified that he rarely left his bed or answered the door, particularly because his bedroom was on the second floor while the front door was on the first floor. El Naka corroborated this account, testifying that from December 1, 2016 to May 2017, defendant would not have answered the door, and that other people residing at the home, including their two maids and two children, would have answered the door instead. Defendant testified that he knows that nobody came to his home on March 28, 2017 because if they had, someone in the household would have alerted him. El Naka similarly testified that she could not remember if

anyone came to the house with court papers during the period from December 1, 2016 to May

2017, but that if they had, she would have alerted defendant. Notably, while El Naka testified

that defendant lacked personal autonomy and was unable to drive until around June 2017,

defendant swore in his affidavit that his doctors permitted him to drive with a family member

sixteen weeks after being re-admitted to treat his mini-stroke symptoms (Docket no. 49-2 ¶ 5), or

around mid-April 2017.

Despite testifying that he would not have answered the door, defendant also contests the

physical description in the March 29, 2017 affidavit of service, arguing that while the affidavit

describes defendant has having black hair, 62 years old, standing 6' tall, and weighing 175

pounds, he is actually bald, 53 years old, standing 6'2" tall, and weighs 228 pounds. (Docket no.

49 ¶ 5). Defendant argues that these discrepancies are "significant," and reiterated during his

testimony that the description in the affidavit was incorrect. (Docket no. 49 ¶¶ 6–8). Defendant

did not offer a theory as to who may have received the summons, instead suggesting that the

papers were never served, and the process server was lying.

In opposition, plaintiff produced a signed affidavit from Abel Emiru, a private process

server, swearing that Emiru knew who Garada was and personally served him three separate

times and his son once. (Docket no. 54-1). In his affidavit and during his testimony at the

evidentiary hearing, Emiru stated that he has been employed as a personal process server with

Capitol Process Services, Inc., located in Washington, D.C., since September 2016. (Docket no.

54-1 ¶ 2). At the evidentiary hearing, Emiru identified Garada as the person he served on the

evening of March 28, 2017 at his residence located at 5105 Colebrook Place, Alexandria,

Virginia 22312, and that Garada briefly reviewed the papers, accepted them, and thanked him.

(Docket no. 54-1 ¶¶ 3–5). Emiru knew who Garada was because he served him at the same

address on January 17, 2017 in an unrelated matter, describing him as a "white male, age 54, weighing 190 pounds, 5'11" tall, bald and without glasses." (Docket no. 54-1 ¶ 20–22; *see* Docket no. 54-5). Emiru again identified Garada as the person served on that date. Emiru also personally served Garada in this matter with the Preliminary Injunction Order at the same address on April 19, 2017, describing him as a white male, age 60, weighing 175 pounds, 6'0" tall, bald and without glasses. (Docket no. 54-1 ¶¶ 11–14; *see* Docket no. 54-3). Emiru explained the discrepancy in how Garada's hair was described in these affidavits by testifying that the listed physical descriptions are a quick judgment call, and noted that Garada is "bald or balding on the top of his head but has black hair on the sides of his head." (Docket no. 54-1 ¶ 8).

Based on the record presented involving this motion, including the testimony presented during the hearing, it is recommended that the court find that defendant was served properly. The signed return of service filed on March 31, 2017 constitutes *prima facie* evidence of valid service. Defendant's rebuttal to plaintiff's signed return of service rests almost entirely on his and his wife's testimony that they were not personally served on March 28, 2017, and have never seen the personal process server. The testimony offered on behalf of defendant lacks credibility in light of the full body of evidence and fails to satisfy the need for strong and convincing evidence. Moreover, as explained in more detail below, even if defendant was not served properly on March 28, 2017, the evidence strongly suggests that he had actual notice of the litigation before the entry of a default judgment, and for months following entry of the default judgment.

## Actual Notice

The Supreme Court has held that where a court finds that a party failed to serve a summons and complaint, a moving party that received actual notice of the filing is not entitled to

relief under Rule 60(b)(4). *United States Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). Similarly, VA Code § 8.01-288 provides that "[e]xcept for process commencing actions for divorce or annulment of marriage or other actions wherein service of process is specifically prescribed by statute, process which has reached the person to whom it is directed within the time prescribed by law, if any, shall be sufficient although not served or accepted as provided in this chapter."

Plaintiff has identified several occasions where defendant received actual notice of this litigation. Plaintiff personally served defendant two additional times after service of the initial summons through the same private process server, Abel Emiru, on April 19, 2017 (Docket no. 14) and on November 8, 2017 through his son, Mohammed Garada (Docket no. 54-4). Plaintiff also met with defendant in person or spoke over the phone on three occasions: (1) in person sometime in May 2016 to comply with this court's preliminary injunction (Docket no. 19 ¶ 4); (2) over the phone on December 15, 2017 to discuss plaintiff's post-judgment discovery requests (Docket no. 39 ¶ 7); and (3) on December 20, 2017 to discuss plaintiff's post-judgment discovery requests (Docket no. 39 ¶ 8). Additionally, plaintiff served defendant by U.S. Mail at his residence on numerous occasions prior to the filing of his motion to vacate, including: (1) on April 27, 2017 with plaintiff's request for default (Docket no. 15 at 3); (2) on May 12, 2017 with plaintiff's motion for default judgment (Docket no. 18 at 15); (3) on May 15, 2017 with a notice of hearing for plaintiff's motion for default judgment (Docket no. 21); (4) on November 20, 2017 with several notices to take depositions (Docket nos. 26–31); (5) on December 1, 2017 with several renewed notices to take depositions (Docket nos. 32–37); (6) on December 14, 2017 regarding plaintiff's post-judgment discovery requests (Docket no. 54 ¶ 18); (7) on January 5, 2018 with a notice to take the deposition of Khaled Garadah (Docket no. 38); and (8) on January

11

9, 2018 with plaintiff's motion to compel (Docket no. 39 at 6). Finally, the court, either from the undersigned's chambers or the Clerk's Office, mailed several orders to defendant's residence prior to the filing of defendant's motion, including: (1) the preliminary injunction entered on April 17, 2017 (Docket no. 12 at 8); (2) the order directing plaintiff to file a motion for default judgment on May 8, 2017 (Docket no. 17 at 2); (3) the undersigned's proposed findings of fact and recommendations on May 26, 2017 (Docket no. 23 at 14); and (4) the judgment and permanent injunction order on June 14, 2017 (Docket no. 24 at 3).

At the evidentiary hearing on February 16, 2018, defendant and El Naka confirmed that at all times during this litigation they resided at 5105 Colebrook Place, Alexandria, Virginia 22312, received mail at that address, and regularly checked their mail. Despite establishing that he would have received mail directed towards his residence, defendant testified that he first received notice of the action in November 2017 when he received plaintiff's post-judgment discovery requests through his son. Defendant further testified that he did not recall being personally served with the preliminary injunction on April 19, 2017. Plaintiff rebutted defendant's testimony regarding service on April 19, 2017 with testimony from Abel Emiru, who again identified Garada as the person he served with the preliminary injunction on that date. Emiru testified that he recognized Garada because he had served him three weeks earlier.

Defendant also testified that while he met with a representative from Goodwill in May 2017, he was not made aware of the pending litigation and believed that the discussion was confined to the terminated contract between the parties. Additionally, defendant testified that when he met with a Goodwill representative in December 2017, he explicitly told the representative that he had not been served with the summons and complaint, and was unaware of the litigation until November 2017. Regarding the documents served through U.S. Mail,

12

defendant testified that he did not personally check the mail during the period from December 1, 2016 to May 2017. El Naka corroborated this account and testified that during that period, she reviewed all incoming mail in order to pay the bills, and set aside any "work" letters for defendant, including those sent by Goodwill. She also testified that she did not receive any court documents during that time, and could not remember if she received any mail bearing the name "Eastern District of Virginia." However, El Naka testified that starting 10 weeks ago, around December 2017, she began receiving "mails and court order" at her residence regarding "Mr. Khalid Garada, Ms. Lina El-Nakka, and Mr. Rafik Moheyeldin," despite notifying the messenger that those individuals no longer lived there. (Docket no. 56 at 1). El Naka confirmed that despite receiving those "mails and court order" starting in December 2017, she did not receive any of the previous pleadings or orders mailed to her residence by the court or plaintiff starting in April 2017.

Based on the record presented involving this motion, including the testimony presented by the parties, the undersigned recommends a finding that defendant had actual notice of the litigation. Despite numerous attempts by plaintiff to personally serve defendant, serve defendant by U.S. Mail, and otherwise discuss aspects of the litigation with defendant, and several orders sent by the court by U.S. Mail, defendant somehow contends that he was completely unaware of the action pending against him until November 2017. Given that defendant testified that at all times during this litigation he resided and received mail at the address where these documents were served, it would require truly incredible circumstance for him not to have received any of those documents prior to November 2017. Defendant did not even attempt to provide a credible explanation for how he never received these documents at his residence.

13

Moreover, even assuming he first received notice of the litigation in November 2017, defendant still waited for over two months to file his motion to vacate while contemporaneously coordinating with plaintiff on plaintiff's post-judgment discovery requests. Defendant testified that this delay was because he did not understand the nature of these documents. This is difficult to believe, given that Ken Robinson, a criminal defense attorney, testified at the evidentiary hearing that he was in regular contact with defendant regarding an unrelated criminal matter. The document he received was entitled "Plaintiff's First Set of Post-Judgment Interrogatories to Defendant Alaa Garda," contained the case caption, and was signed by "Attorney for Plaintiff, Davis Memorial Goodwill Industries." (Docket no. 39-1 at 2). In addition, defendant received six separate deposition notices referencing this matter on or shortly after November 20, 2017, and again on or shortly after December 1, 2017 (Docket nos. 26–37).[3] Defendant's explanation for his delay in not pursuing this motion is not credible. Therefore, the evidence clearly establishes that even if defendant was not properly served on March 28, 2017, he was on actual notice of this action before the entry of the default judgment against him. For these reasons, it is recommended that there be a finding that defendant was on notice of the litigation.

## Vacating Judgment

Federal Rule of Civil Procedure 60(b)(4) provides that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . [if] the judgment is void." Additionally, a motion under Rule 60(b) "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). A judgment is void "only if the court that rendered judgment lacked jurisdiction over the subject matter or the parties," and "[v]alid service of process is a prerequisite to a district court's assertion of personal jurisdiction." *Choice Hotels Intern., Inc. v. Bonham*, 125

---

[3] At the evidentiary hearing, El Naka confirmed that these were some of the documents referenced by her letter to the court. (*See* Docket no. 56).

14

F.3d 847 (table) (4th Cir. 1997) (citing *Schwartz v. United States*, 976 F.2d 213, 217 (4th Cir. 1992) and *Swaim v. Moltan Co.*, 73 F.3d 711, 719 (7th Cir.), *cert denied*, 517 U.S. 1244 (U.S. June 10, 1996)). "Federal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an arguable basis for jurisdiction." *Espinosa*, 559 U.S. at 271.

In considering a Rule 60(b) motion stemming from a default judgment, the Fourth Circuit takes a "liberal view" due to the "equitable balance between [the court's] preference for trials on the merits and the judicial system's need for finality and efficiency in litigation." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988). The Fourth Circuit draws a "clear line between the fault of counsel and the fault of a party personally," finding that "propriety of giving relief must be resolved in the movant's favor when the movant bears no personal responsibility for the error which led to the default." *Id.* However, where a party fails to show "excusable neglect, or any excuse at all, for its failure to answer" it is not entitled to relief. *Id.*

As discussed above, defendant was properly served and had actual notice of the litigation. This court previously established that it had personal jurisdiction over defendant, a Virginia resident, and subject matter jurisdiction over the matter pursuant to 28 U.S.C. § 1332. (Docket no. 12 at 3). Additionally, even in light of the Fourth Circuit's "liberal view" of Rule 60(b), there is no basis to vacate the judgment against defendant. As the *Augusta* court notes, the Fourth Circuit is primarily concerned with a default entered due the fault of counsel rather than the fault of a party personally. *Augusta*, 843 F.2d at 811. Defendant's failure to file a responsive pleading at any point during the litigation despite receiving notice of the litigation is clearly his

15

fault, not the fault of counsel.  Moreover, defendant's Rule 60(b) motion was not filed within a reasonable time, and defendant has offered no plausible justification for the delay.  Accordingly, the undersigned recommends a finding that defendant is not entitled to relief pursuant to Rule 60(b), and his motion to vacate the default judgment against him should be denied.

## Conclusion

For the reasons stated above, the undersigned magistrate judge recommends that defendant Alaa Garada's motion to vacate default judgment (Docket no. 48) be denied.  The undersigned recommends that the default judgment entered in this matter (Docket no. 24) remain in force and that defendant be directed to comply with the judgment.

## Notice

By means of the court's electronic filing system, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

Entered this 27th day of February, 2018.

_____ /s/ _____
John F. Anderson
United States Magistrate Judge
_____
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia